Opinion issued December 1, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-11-00085-CR

———————————

Chester Joseph McClelland, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 337th District Court 

Harris County, Texas



Trial Court Case No. 1232804

 



 

MEMORANDUM OPINION

A jury convicted Chester Joseph
McClelland of aggravated robbery and, after finding true
two enhancement paragraphs, assessed his punishment at life in prison.  See Tex. Penal
Code Ann. § 29.03 (West 2011). 
In his sole issue on appeal, McClelland contends that the evidence is legally
insufficient for a jury to find him guilty of aggravated robbery because the
evidence does not support a finding that the hammer used by McClelland during
the robbery was a deadly weapon.  We hold
that the evidence is sufficient for a rational jury to find beyond a reasonable
doubt that the hammer was a deadly weapon. 
We therefore affirm the judgment of the trial court.

Background

          On
September 14, 2009, Juan Tellez and Dora Garza, employees of EZ Pawn, arrived
at the store to prepare for its morning opening.  While performing their duties, Tellez and
Garza noticed McClelland trying to open the locked front doors.  Although unsuccessful the first time, McClelland
returned to the store and again tried to open its doors.  Uneasy about McClelland, Garza asked Tellez
to step outside to place the larger display merchandise in front of the store
even though it was normally Garza’s job to do so.  When Tellez walked outside, he noticed McClelland
waiting on the curb near the store.  Tellez,
recognizing McClelland from a prior shoplifting incident at the store, told McClelland
to leave the premises.  McClelland stood
up and pointed a brown paper bag, which appeared to contain a gun, at Tellez’s
head.  McClelland taunted Tellez by
saying that he bet that Tellez “did not feel so big anymore.”  Continuing to hold the bag near Tellez’s head,
McClelland forced Tellez back into the store. 

Once inside, McClelland
told Garza and Tellez to lie on the floor. 
McClelland tied Tellez’s hands behind his back with an extension cord
but did not tie up Garza.  While Tellez
and Garza lay on the floor, McClelland put the paper bag down on the counter
and began to walk around the store. 
McClelland picked up a hammer from a counter and used it to hit television
equipment located at the rear of the store. 
When McClelland turned away, Tellez looked inside of the brown bag and
noticed that it contained only a wire that was shaped like a gun barrel.  Tellez told Garza to run, and she fled.  When McClelland noticed Garza’s attempt to
escape, he ran at Tellez and Garza with the hammer raised.  When McClelland got close to Tellez,
McClelland lifted his arms to swing the hammer at Tellez.  Tellez, unable to completely free himself
from the cord, was restrained near the door but wrestled with McClelland and
grabbed the hammer.  During the ensuing
struggle, Tellez hit McClelland multiple times with the hammer.  After the police arrived and arrested McClelland,
he was treated by EMTs and was later sent to the hospital for treatment.

Sufficiency
of the Evidence

A.  
Standard
of Review

“[E]vidence is insufficient to support a conviction if, considering all
record evidence in the light most favorable to the verdict, a factfinder could
not have rationally found that each essential element of the charged offense
was proven beyond a reasonable doubt.” Gonzalez
v. State, 337 S.W.3d 473, 478 (Tex. App.—Houston [1st Dist.] 2011, pet. ref’d).  Under this standard there are four
circumstances in which the evidence is insufficient: “(1) the record contains
no evidence probative of an element of the offense, (2) the record contains a
mere “modicum” of evidence probative of an element of the offense, (3) the
evidence conclusively establishes a reasonable doubt, and (4) the acts alleged
do not constitute the criminal offense charged.”  Id. at
479.  An appellate court presumes that
the fact finder resolved any conflicting inferences in favor of the verdict and
defers to that resolution.  See Jackson v. Virginia, 443 U.S. 307, 326, 99 S. Ct. 2781, 2793 (1979); Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).  An appellate
court may not re-evaluate the weight and credibility of the record evidence and
thereby substitute its own judgment for that of the fact finder.  See Williams
v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  

B.  
Applicable
Law

The Texas Penal Code
provides, in pertinent part, that a person commits robbery if the person, “in
the course of committing theft . . . and with intent to obtain or maintain
control of the property, . . . intentionally, knowingly, or recklessly causes
bodily injury to another . . . .”  Tex. Penal Code Ann. § 29.02 (a)(1) (West
2011).  The offense is elevated to
aggravated robbery when the person uses or exhibits a deadly weapon.  See Tex. Penal Code Ann. § 29.03(a)(2)
(West 2011).  A
deadly weapon is defined as “anything that in the manner of its use or intended
use is capable of causing death or serious bodily injury.”  Tex.
Penal Code Ann. § 1.07(a)(17)(B) (West 2011).  

Like
a knife or fist, a hammer is not a deadly weapon per se.  However, depending
on the circumstances, a jury may determine it to be a deadly weapon under the
statute.  See Bethel v. State, 842 S.W.2d 804, 807–08 (Tex. App.—Houston [1st
Dist.] 1992, no writ.) (hammer used in commission of assault found to be deadly
weapon); see Bui v. State, 964 S.W.2d
335, 342–43 (Tex. App.—Texarkana 1998, pet. ref’d.) (evidence sufficient to
find Duraflame log was deadly weapon).  Some
of the factors that a jury may consider in determining whether an object is a
deadly weapon under this definition include: the size and shape of the weapon,
testimony by the victim that he feared death or serious bodily injury, the severity
of any wounds inflicted, the manner in which the assailant allegedly used the weapon,
physical proximity of the parties, and testimony as to the weapon’s potential
for causing death or serious bodily injury. 
See Denham v. State, 574 S.W.2d 129, 130 (Tex. Crim. App. 1978) (en
banc); Romero v. State, 331 S.W.3d
82, 83 (Tex. App.—Houston [14th Dist.] 2010, no pet.); Jackson v. State, 668 S.W.2d 723, 725 (Tex. App.—Houston [14th
Dist.] 1983, pet. ref’d) (evidence sufficient to find ax handle deadly weapon where
victim testified he was afraid and officer testified the ax handle could be a deadly
weapon).  “No one factor is determinative
and an appellate court must examine each case on its own facts to determine
whether the fact finder could have concluded from the surrounding circumstances
that the object used was a deadly weapon.” 
In re S.B., 117 S.W.3d 443,
447 (Tex. App.—Fort Worth 2003, no pet.) (citing Brown v. State, 716 S.W.2d 939, 947 (Tex. Crim. App. 1986)).  The plain language of the Texas Penal Code
does not require that the actor actually intend death or serious bodily injury,
only that the actor intend to use the object in a manner that renders it
capable of causing death or serious bodily injury.  McCain
v. State, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000).  Thus, the State must show only that the “use
or intended use is capable of causing
death or serious bodily injury.”  Tucker v. State, 274 S.W.3d 688, 691
(Tex. Crim. App. 2008) (quoting McCain,
22 S.W.3d at 503).

C.  
Analysis

On appeal,
McClelland asserts that the evidence is insufficient to show that the hammer
used during the robbery was a deadly weapon. 
McClelland points to the testimony of Officer E. Arjona who testified
that the hammer in this case was small.  McClelland
notes that while Arjona testified that a
hammer could be a deadly weapon, he didn’t testify that this hammer could be.  McClelland
also asserts that because Tellez did not suffer any injuries, and McClelland
did not make any verbal threats, the evidence is legally insufficient for the
jury to find the hammer was a deadly weapon.

At trial,
the State presented a surveillance video showing McClelland making his way
towards Tellez and Garza, with the hammer in his hand.  The State also put on testimony from Tellez
and Garza that McClelland had charged at Tellez and tried to hit Tellez with
the hammer.  Tellez testified that when
McClelland got close to Tellez, McClelland lifted his arms to swing the hammer
at Tellez, but the two wrestled and Tellez managed take the hammer away.  Garza testified that she saw McClelland
holding the hammer up at Tellez, and that McClelland had tried to hit Tellez
with the hammer.  Garza also testified
that she was afraid and thought that she was going to die.  From this testimony and from the video that
showed the manner in which McClelland held the hammer as he walked towards
Tellez and the proximity of the two men during the struggle, a jury rationally could
have concluded that McClelland “intend[ed] a use of the
object in which it would be capable of causing death or serious bodily injury.”  McCain,
22 S.W.3d at 503. 

Although the presence and severity
of wounds is not required to find deadliness, it is another factor the jury
could have considered.  See Denham, 574, S.W.3d at 130.  Here, Tellez managed to gain control of the
hammer before McClelland used it against him. 
The wounds that McClelland sustained from the hammer were severe enough
that, even after McClelland was treated on-site by EMTs, he was taken to a
hospital for further treatment.  The jury
was also able to consider the size and shape of the hammer, as it was offered
into evidence at trial.  See Robertson v. State, 163 S.W.3d 730,
734 (Tex. Crim. App. 2005) (when switchblade was introduced into evidence fact finder
could examine it and ascertain for itself whether it had physical
characteristics that revealed a deadly nature). 


McClelland relies on Lewis v. State, 638 S.W.2d 148 (Tex.
App.—El Paso, 1982, pet. ref’d) to support
his contention that the evidence was insufficient for a jury to find that the
hammer was a deadly weapon.  In Lewis,
the El Paso Court of Appeals found that the evidence was insufficient to
support a conclusion that the hammer was a deadly weapon.  Lewis,
638 S.W.2d at 151–52.  This case
is distinguishable because, in Lewis,
the hammer was not introduced into evidence, and there was no evidence of the
dimensions or weight of the hammer.  Id. at 151.  Nor was there evidence of the proximity of
the combatants or the hammer swing to the victim.  Id.  We find the evidence in Lewis significantly different from the
evidence adduced in this case.

Based on the evidence presented at
trial, we conclude that a rational jury could have found beyond a reasonable
doubt that the hammer, in its manner of use, was “capable of
causing death or serious bodily injury.” 
See Bethel, 842
S.W.2d at 807–08 (hammer used in commission
of assault was a deadly weapon); Charleston v. State, 33 S.W.3d 96, 99–100 (Tex. App.—Texarkana
2000, pet. ref’d) (finding legally sufficient evidence of deadly weapon when
appellant told complainant he was robbing her, held wrench over her head, and
complainant testified wrench could have killed her with one hit); see Granger v. State 722 S.W.3d 175, 177
(Tex. App.—Beaumont 1986, pet. ref’d) (evidence appellant, using both hands, swung
club at victim multiple times, breaking club and causing injuries to victim’s head,
was sufficient to find weapon deadly).

Accordingly, we overrule McClelland’s
sole issue.

Conclusion

We affirm the judgment of the trial court.  

 

                                                                   Rebeca
Huddle

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Bland and Huddle.

Do
not publish.   Tex. R. App. P. 47.2(b).